IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| IN RE: ADVOCACY RESOURCES CORPORATION,<br><br>Debtor,<br><br>v.<br><br>MICHAEL E. COLLINS,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED, an agency of the United States of America; TERESA LASSETER, administrator of the Farm Service Agency; and UNITED STATES DEPARTMENT OF AGRICULTURE, an agency of the United States of America,<br><br>Defendants. | NO. 2:09-0068<br>JUDGE HAYNES |

**M E M O R A N D U M**

Before the Court is the Defendants' motion for de novo review of the Bankruptcy Judge's Report and Recommendation that the Defendants' administrative decision changing the pricing method for determining costs pricing for Advocacy Resources Corporation, a non-profit entity that employs blind and handicapped workers for the sales of goods and services to the United States under the Javits-Wagner-O'Day Act ("JWODA"), 41 U.S.C. § 46-48c. This action presents three issues: (1) whether the Bankruptcy Judge considered information outside the "administrative record"; (2) whether the Bankruptcy Judge's findings that the Committee's

pricing determination was arbitrary and capricious because of the Committee's reliance on a new pricing method is erroneous; (3) whether the Bankruptcy Judges's finding that the Committee's pricing decision was not supported by substantial evidence is erroneous.

As to their "administrative record" contention, the Defendants filed the administrative record with the Bankruptcy Judge (Docket Entry No. 41)[1] that was limited to the time period of 2007. Additional materials from the Committee's files that involved the parties' activities in 2006 on the issues in this action were later filed. (Docket Entry No. 43). In the "Certification of Index to the Administrative Record" filed with the 2006 documents, the Assistant General Counsel for the Committee stated that she is the "custodian of the administrative record" maintained by the Committee and that the record is maintained "in the above-captioned matter." Id. at subpart 1, page 1. Moreover, it is undisputed that in their Joint Pretrial Stipulations before the Bankruptcy Judge, the parties stipulated to the authenticity and admissibility of both sets of documents and reserved any objections or arguments only as to relevancy. Joint Pretrial Stipulations at ¶ 10.

Under the Administrative Procedures Act, the "whole record" for judicial review consists of "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Thompson v. United States Dept. of Labor, 885 F.2d 551, 555-56 (9th Cir. 1989) (quoting Exxon Corp. v. Dept. of Energy, 91 F.R.D. 26, 33 (N.D. Tex. 1981). Given the Assistant General counsel's certification and stipulations of the parties, the Court concludes that the cited 2006 documents were relevant to the parties' contentions. Thus, the Court deems this Committee's objection on this issue to be without merit.

---

[1]Unless otherwise ruled, this docket entry citations are to the Bankruptcy Clerk's docket.

As to the substantive issues, the Bankruptcy Court made meticulous and well-written factual findings on the Committee's pricing decision. Those factual findings aw well as his well-reasoned conclusions of law are incorporated herein by reference. The Bankruptcy Judge summarized his findings and conclusions as follows:

> The big picture is not as complicated as the facts above suggest. Between 1999 and 2004, ARC, USDA and the Committee repeatedly agreed upon a base price for VegOi1 that included consideration of the special costs for an employer of the severely handicapped and repeatedly agreed to negotiate on the same cost-basis in the future. The defendants changed the rules in the middle of a multi-year impasse and imposed a commercial market-based formula that included no consideration of these special costs of production.
>
> After ARC's impasse declaration of January 24, 2006, the Committee staff returned with a pricing approach the parties had never seen before. The staff accepted the base price negotiated by ARC and USDA but then constrained that base price with a 11011 15% price cap relative to competitive bids. This new formula was nonsensical because, after deduction of the 4% NISH fee, the 10611 1 1% of commercial price cap was far less than the actual, negotiated prices historically based on ARC's costs. In other words, the staff recommended a pricing formula that invalidated the cost-sensitive base price negotiated by the parties and that formula forced ARC out of the VegOil business and effectively removed VegOil from the AbilityOne Program.
>
> In 2007, after several additional unsuccessful attempts at negotiation by the Trustee, the Committee went still further by eliminating altogether even the pretense of an identifiable "base price," substituting instead a formula price that is only determinable in the future as 10% (6% after NISH) above average commercial bids-again, an amount and a mechanism for price determination that the Committee knew was impossible for ARC.
>
> The Committee's decision to require ARC to accept a pricing formula based on an impossibly low fixed percentage above the average of an unknowable future commercial market without consideration of ARC's costs is arbitrary because: 1) the Committee cannot pretend that resolution of the 2007 impasse is unrelated to the history of ARC's participation in the AbilityOne VegOil Program; 2) there is a long history of cost-based negotiation and cost-based price setting for ARC'S participation in the VegOil Program; 3) the change in the pricing mechanism was imposed abruptly in the middle of an ongoing impasse and departed without explanation from the cost-based mechanism negotiated by the parties; 4) there is

no evidence that any AbilityOne-qualified VegOil producer could exist at the formula price imposed by the Committee; and, 5) the only basis for the numbers imposed by the Committee are demands by foreign aid customers and mathematical guesses by the government.

(Docket Entry No. 2, Report and Recommendation at pp. 21-22).[2]

As to the Committee's challenges, the parties' discussions on price was for a contract for 2005 at which time Pricing Memorandum No. 2 ("PR-2") that is dated August 7, 1998 reflected the historical method for the Defendants' pricing decisions under the Act. This Memorandum was revised in 2007 and as amended, provides that it "is mandatory for price recommendations that commence on or after the effective date [February 1, 2007] and lead to the establishment of a base price recommendation." [Reg. Docs., at p. 1871]. The term "Base Price" is a defined as "the term for the initial Fair Market Price for the product or service in the base year of a contract with multiple follow-on or option years." [Reg. Docs., at p. 189]. The plain language of the 2007 Revised PR-2 only applies to contracts signed or negotiated after February 1, 2007, where the initial Fair Market Price is established.

The Defendants' core objection is that if the Revised 2007 PR-2 is applied, then the Committee's decision is not arbitrary and capricious because the Revised 2007 PR-2 specifically allows consideration of cost and is sufficient flexible to consider historical practices.

An administrative decision is "arbitrary and capricious" when the agency relies on factors which Congress has not intended it to consider, or failed to consider an important aspect of the problem, or offered an explanation for its decision that is contradicted by the evidence before the agency, or the agency's decision is so implausible that the decision does not reflect a product of

---

[2]This Docket Entry is to the District Court's docket.

4

agency expertise. <u>Motor Vehicles Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983); <u>Henry Ford Health Sys. v. Shalala</u>, 233 F.3d 907, 911 (6th Cir. 2000). "While ... agencies are granted tremendous deference in interpreting Congressional directives and in formulating implementing regulations, that deference must end when an agency acts as arbitrarily and obtusely with regard to the law and facts ..." <u>Mahon v. U.S. Dept. of Agriculture</u>, 485 F.3d 1247, 1261 (11th Cir. 2007).

Here, the Bankruptcy Court found that the Committee relied on factors which Congress did not intend the Committee to consider; *i.e.*, consideration of foreign aid programs, failed to consider an important factor *i.e.*, that qualifying non-profit firms under the Act face higher costs than private competitive firms, and that the Committee's explanation for its pricing decision was counter to the evidence before the Committee.

The administrative record reflects that the Committee's staff determination letter disregarded ARC's costs and its ability to produce at a particular pricing level as "not beneficial to our decision" and of "minimal value to the staffs decision." (Docket Entry No. 41-4, 2007 at p. 1211). The Staff Determination Letter ignored that ARC was required to pay its national institute for a fee equal to 4% of the base price - a fact previously considered by the USDA in its pricing decisions. (Docket Entry No. 43-3, at p. 98, 111). The Committee staff determined that ARC could produce goods with the 10% added to a pricing structure based upon competitive bids from private firms. The 10% limitation or cap fails to consider ARC's additional costs due to its employment of persons with severe disabilities and the purpose of the JWODA that is to enable such persons to sell goods to the government.. The record is clear that historical pricing under the prior arrangement resulted in ARC's prices at approximately 23% more than

5

commercial bidders. (Docket Entry No. 41-1 and 41-2 at pp. 16-17). The USDA never disputed the Trustee's position that approximately 23% was necessary to cover the costs associated with the production by ARC employees. (Docket Entry No. 41-2 at p. 671). Thus, the Court agrees that the Committee's adoption of the 10% cap for the ARC is unsupported by the record.

The Bankruptcy Court properly found that the record established that the Staff's determination was tied to the Committee's staff view of impact of a higher cap on other foreign aid programs. The Staff Determination Letter reflects that its consideration that to set a higher cap for ARC would effectively take money from USDA foreign aid programs. (Docket Entry No. 41-4 at p. 1221). The Committee Determination Letter stated that the concern about feeding fewer people in developing countries "was not given substantial weight." Yet, the record reflects that USDA specifically described its contact with program agencies for which the USDA procured the vegetable oil - USAD and FAS and those agencies "indicated that they would be amenable to a price premium of up to ten percent. . . ." (Docket Entry No. 41-2 at p. 741). The Committee staff then contacted USDA about the 10% figure without informing the Trustee. (Docket Entry No. 41-3 at p. 1001). The USDA responded that the 10% figure was the "upper limit" of what the foreign aid agencies "could forego in program funds and not be so deleterious to the delivery of food aid as to overly compromise their respective missions." (Docket Entry No. 41-3 at p. 991).

In short, the Court agrees with the Bankruptcy Judge that the Committee's staff did not justify the 10% figure and simply adopted the 10% formula as the maximum figure that other related entities could tolerate. The Court concludes that the Bankruptcy Judge reasonably concluded that the staff recommendation lacked a thorough analysis of the appropriate pricing

and also disregard to the 10% impact on ARC, given the historical record of ARC's pricing.

The only basis of the USDA's position for any percentage cap on the pricing is the Independent Government Estimates ("IGE). (Docket Entry No. 41-2 at p. 73-74). The Bankruptcy Judge appropriately found the lack of any factual relationship between any IGE and the appropriate pricing for ARC's historical costs under the AbilityOne Program that the Committee previously recognized. The administrative record also reflects that the USDA and ARC agreed to use the negotiation-based approach which incorporates the cost consideration, but the Committee's Final Determination Letter clearly imposed a formula-based approach for pricing. The Bankruptcy Judge correctly concluded that the 10% premium was unsupported by the record.

The Court adopts the Bankruptcy Judge's findings, conclusions of law and recommendation.

An appropriate Order is filed herewith.

**ENTERED** this the 13th day of July, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge